The first case for argument this morning is 16-1345 Daydanyon Corporation v. Defense Logistics Agency. Mr. Kaufman, whenever you're ready. Good morning, Mr. Commissioner. The board misused DCX and in doing so disturbed sound legal principles found in Burlington, Chenery, Chevron, the APA, the presumption of regularity doctrine, the McDonnell Douglas cases, and DCX itself. The board found CSRS accepted by the government and should have found a statutory or regulatory waiver resulted. The government had admitted it did not exist. The board allowed post hoc rationale to stand as contemporaneous considerations. The FAR clause language that is clear and unambiguous and conveys a right to the contractor were ignored. Why does 49-4025 create a right in contractor when DCX says that a similar provision does not create a right? It's not section five, your honor, that creates the right. It's 4023C that creates the right. What does that say? 4023C, starting in the middle of 4023C indicates that, however, if the government has taken any action that might be construed as a waiver of the contract delivery performance date, the contracting officer shall send a notice to the contractor setting a new date for the contractor to make delivery or performance. And this final sentence is key. The notice shall reserve the government's right under the default clauses. So failure to send that together and ignored it in their findings. But that provision has been construed to just restate the general rule about waiver by the government, right? Not that I'm aware of. I have not found federal case holding by a court that limits the interpretation to 4023C. Well, the DeVito case came after that regulation, right? Correct. But it spoke to other forms of waiver, not statutory waiver or regulatory waiver. So you're saying this regulation goes beyond the DeVito requirements? It's different than the DeVito requirements. Correct. It's statutory in nature. It grants us a contractual right unto the contractor protecting them. And it also protects the The reason it's there, the reason that clause says that is it specifically wants the government to be able to protect its rights under the default clause. DCX's explicit language indicates that the DCX case referred to Section F of that same regulation. And that section doesn't convey any such rights. It just says, here's what the contracting officer shall consider. It gives a list. But there's nothing... DCX is about Subsection 4, right? This case deals with 5. My understanding is DCX addresses the specific seven steps of 49-4023F. So just to be clear, you're not arguing that 49-4025 was violated here? I am. You are? But that comes back to my question, why isn't this regulation just like the one that issue in DCX, it's not designed to benefit the contractor? It's not that it's a benefit. At that point, the violation of Section 5 goes to speak to the irregularities of the contracting officer's behavior and the lack of a contemporaneous record. There's no way... It's prejudicial to the contractor if there's no record. You're not answering my question. Why isn't 4025 a provision just like the one in DCX which isn't designed to benefit the contractor? It's in addition to the list of things in F, because it sort of memorializes the behavior. It's not... 5 doesn't say, this is what you'll do to make your analysis. It says, this is what you do to show that you even went through the analysis. So that after the fact, we can look and see, what did the contracting officer do? What steps did they take? Who did they talk to? What analysis did they make about time, money, proprietary nature of the agreements and the modifications? So without it, we're left just guessing at what the CO may or may not have done. So in that way, I believe that's how it's different. We also believe that the board found that the government accepted shipping requests, a fact that the CO denied in error in his termination notice. What do you mean, accepted shipping requests? The CSRS, in the court's finding, he indicated that the CSRS were accepted by the DCMA. How are they accepted? By being entered into the government system? And then the DCMA accepts them, begins to set up shipping dates, and they start corresponding about how many trucks do you need? How much is it going to weigh? When can we set up inspections? There's procedures that set up. The contracting officer is notified that that happens, and that's what prompts that requirement that he give notice. You know, again, 4023C at that point kicks in, and the contracting officer can say, well, wait a second. I don't accept that, and he could stop it. He can say, well, okay, I'll agree, but I don't agree with your dates. Here, I'll give you the new dates, and here's your notice. You didn't even comply with your own dates, right? There was no delivery. That's correct, because we had no inspections. What do you mean you had no inspections? Roughly, the timing of this is very odd. At the end of February, the inspector involved in the contract retired, so it took some time for a new inspector to be assigned to the case. During the month of March, there's communications in the record that timing of those inspections just were never finalized. But I don't recall that you argued that you were entitled to a time extension here because the government failed to do the required inspections. No, that's just a fact. If you believe that you were entitled to a time extension based on a lack of inspection, you had to ask for one. Well, we hadn't been given the notice by the contracting officer for an extension of the time to start. That would have been the appropriate first step. I don't understand. What kind of notice did you expect, and when did you expect it? The contracting officer should have, in a reasonable time after the CERS was accepted by DCMA, the government, he should have notified all the parties involved that there's an extension or a new date for delivery determined and set that calendar. Once that calendar was set, then all the parties could have proceeded in properly scheduling inspections and properly setting up a delivery date, not just a proposed delivery date based on the CERS that was submitted by the contractor. It seems odd that there would be scheduling dates set up when visits to the plant indicated that the situation was nowhere close to production. I think the danger with that phrasing or the phrasing in some of the language that you see in the record is that these are JMICs. I'm not a technical guy, but they're collapsible containers. Some of the essential parts of the production are actually showing how they're put together. So it was, you know, when Upendano, who was the DCMA rep, would go and say, well, nothing's happening. Well, you've got hundreds of parts that have to come together, and the coming together of those parts is part of the essential process in production. Also showing that that can happen and how that happens is also essential. But there were no parts, I mean, there was not even one product that had been assembled. It was so easy to assemble. I misspoke if I said anything was easy. I don't believe it's necessarily easy. I just think once everything would have been inspected and approved, the process could have accelerated quite quickly, and I believe that there's evidence in the record that they indicate that somewhere between 24 and 25 percent of the work that was accomplished, that would have been the output. Where does the contract say the government has to inspect the procedures for assembling as opposed to the product? I don't know. I'm not aware of if that's a specific clause in the contract. Hold on, let me... Again, I'm not sure if that specific language is in the contract itself, but that's the reality of what the JMIC is. You're into your rebuttal time, so you want to save it while we hear from the government. That would be great. Thank you. Thank you. The regulations seem pretty clear to me that there's a requirement that there be a termination memorandum in the file, and there's a lot of really good reasons for that, including some of what the discussion of some of the facts that we heard today. Why is it that the government believes that, contrary to what appears to be clear language in the regulation, that there must be a termination memorandum that in this case, or that that doesn't apply? Good morning, Your Honor. May it please the court. Your Honor, you're correct that the FAR provision 49.402-5 states that when a contract is terminated for default, the contracting officer shall prepare a memorandum for the contract file explaining the reasons for the action taken. That regulation in the FAR does not specify the precise form that the memo has to take. In this case, there's absolutely no dispute that the contracting officer did prepare a written document, four-and-a-half pages, single-spaced. There was a document, but this was a termination memorandum, correct? It was not titled as such. Right. I'm sorry? It was not titled as such. That's correct. So any document that's prepared during the course of, let's say, inspections or during the course leading up to performance, your position is that that can be viewed as the termination memorandum? Well, Your Honor, in this case, that memorandum was prepared contemporaneously with the contracting officer's decision to terminate, and it explains the rationale and the reason. It's the termination notice, right? I'm sorry? It's the termination notice. Yes, it accompanied the termination notice that was sent to the contractor. That's correct. But it explained in great detail the reasons for the contracting officer's decision, and it is the government's position, as found by the board and supported by numerous board decisions and the Court of Federal Claims decision, that under these circumstances, that document fully satisfied the FAR requirement. The fact that – Day-Daniel's argument is really an argument of form over substance. Is there any guidance as to what the memorandum is supposed to say or do? Not in the FAR, Your Honor. It simply says that the memorandum shall explain the reasons for the action taken. Okay, and is it your view that this notice of termination, which is this four- or five-page letter that was sent, effectively does that? Yes, Your Honor. So if you look at page appendix 172, if they had just put the header in, which is memorandum, where they say – you know, the bottom of the first page says the cure notice was issued because of the following facts. If they had labeled that memorandum, that would have satisfied the letter what the regulation says, right? Yes, Your Honor. In other words, it is simply an issue of how the document was titled, I suppose. If it had simply contained a title that said memorandum versus notice for termination for default, then apparently under Day-Danion's reasoning, this would have fully satisfied the requirement, which I think highlights the, as I said, the form over substance nature of the argument because there's been absolutely no showing by Day-Danion here that if there had been – if the contracting officer had simply taken this same document, put a different title on it, stapled it, and put it in a different section of the file, the contract file, as a termination memorandum, and it said the exact same thing, then under Day-Danion's reasoning, it wouldn't have any basis for complaining. So there's simply no purpose to that because the same material was contained in this notice. It was in the contract file. It was also sent to Day-Danion, so Day-Danion was fully aware of the reasoning. And so under the various board decisions and the Court of Federal Claims decision that we cited in our brief, the board is – Well, what is the point of the memorandum and the regulations? Is it the trigger so that the contractor will know what he's – what basis for his notice, and then he can proceed to challenge that if he wishes? Really, Your Honor, the purpose of the regulation, it's the government's position, is to benefit the government so that the government will have something in the file that it can show if there is subsequent litigation about the termination to show that, yes, there was an excess. Well, I mean, I guess one of the aspects may be to have a paper trail for the government, but isn't the main reason, or at least a reason, so that the contractor will know the basis for the termination? Well, Your Honor, the termination – the basis for the termination is, of course, communicated to the contractor, so the contractor should already know the basis for it. Is there a separate provision dealing with the notice of termination? Yes, Your Honor, there is. Let me pull it out here momentarily. And that says that the government has to describe to the contractor what the basis for the termination is, or the termination is, right? Yes, Your Honor. Well, it's 49.42-3, subsection C, that Day-Danion's counsel was also discussing that outlines the notice that's required prior to issuance of a termination for default and the process that the contracting officer follows in issuing a notice for termination. I'm talking about the notice of termination. Doesn't the notice of termination have to describe the basis for it? Yes, Your Honor, and the notice in this case undeniably did exactly that. There's no contention that it doesn't, right? Correct. The notice calls for curing of certain deficiencies, right? Well, Your Honor, there were two notices in this case. There was a notice to cure that was issued before the termination on February 22, 2011, before the contract or delivery order deadlines came and went. And then after that, there was a termination notice that was issued in April 2011, after the deadlines had come and gone. And so at that point, it was no longer simply a failure to cure the lack of progress by Day-Danion. The deadlines had, in fact, come and gone. Not only the delivery deadlines that were mutually agreed to in the contract by the parties, but even the first two of the proposed new deadlines that had been suggested and requested by Day-Danion, those had also come and gone with no delivery by Day-Danion of even a single completed unit of these containers. Now, your friend seemed to suggest that the government dropped the ball in certain respects at certain time frames, including the failure to do the inspection or to schedule the inspection. What do you say to those assertions? Your Honor, what I would say is that to the extent Day-Danion – two things. First of all, to the extent Day-Danion is challenging the factual record before the board, at best for Day-Danion, there was conflicting evidence from the retired DCMA individual, Mr. Johnson, and the ongoing DCMA representative, Mr. Opadesano, about how far along Day-Danion had progressed up to February of 2011. But even under that scenario, there was a conflict of evidence. As Day-Danion says in its brief, page 24, the board was presented with two very different perspectives of where Day-Danion stood. The board weighed that evidence, and there's no basis for this court to overturn it. What does the board say about inspection? In terms of inspection, the testimony before the board – Now, what did the board say? The board – I believe the board said – hold on. Hold on. I'm not immediately finding the board's discussion of that, Your Honor. But the testimony before the board in the record from both the contracting officer was that DLA wanted to inspect a completed unit. That's at Supplemental Appendix 387 to 88. And Mr. Jankowski of Day-Danion likewise testified before the board that the anticipated inspection was to examine assembled units. So there weren't any assembled units. That's correct. That's at page Supplemental Appendix 470. And so as a result of that, because there were no completed units to inspect, no inspection occurred. And there was nothing, certainly in the contract, that required or even contemplated any inspection prior to having a completed unit. Could I ask you about 49-4023C, which is a very, in my mind, confusing provision of the FAR? Yes, Your Honor. Which hasn't been much litigated and has been longstanding. I mean, it just seems to me a very odd provision. The government has taken action that might be construed as a waiver. It's supposed to do these things. Yes, Your Honor. What does that mean? Well, Your Honor, I think as the court noted earlier, you have to read this provision of the FAR in the context of the court's explanations of the waiver doctrine, starting with DeVito. And so before you could have a finding under FAR, Section 49.4023C, that there's been action that might be construed as a waiver. You have to look to how the court has defined waiver as in DeVito with the two elements of forbearance and reliance. And so if the government hasn't taken any action that could be construed as amounting to a waiver, then that language doesn't come into play. But here, certainly, Your Honor, after the... It seems to me this provision is very confusing to conduct. I have no idea why this has remained in the FAR over these years. Might be construed as a waiver. I mean, I can understand if the regulation said if the government has taken action which constitutes a waiver, but might be construed as a waiver. That's very strange. Yes, Your Honor. I can't speak to why it has not been amended. But in the context of this case, certainly, there cannot be any finding of a waiver. First of all, it's the government's position that DeVita has not advanced that argument in its opening brief other than in two cursory references. So, essentially, it's waived any waiver argument. But even if the court were to address it on the merits, the short period of time between the passage of the delivery order deadlines in mid-March 2011 and the termination issuance in April 2011, roughly a month, in the context of this case, would not be sufficient to allow the court to reach a conclusion that there had been any forbearance by the government of the deadline, with an indication that it wanted de Danian to continue to perform. In fact, as de Danian has said in its brief, the only response to its request or proposal in response to the notice to cure of additional deadlines pushing all the way out until May 2011 was silence. There was no indication or response from the contracting officer that they should go forward and that they would be allowed to extend out the deadlines. And in addition to that, there was a total failure of proof before the board on the second prong of any waiver argument, which would be the reliance by de Danian. And as the board found, there was some minimal evidence offered by de Danian of about $1,000 that was spent on some parts and about $32,000 in payroll. But there was no evidence that those expenses actually related to performing this contract as opposed to other work. So there was simply no evidence, as found by the board, that could support any finding of waiver. Unless the court has any further questions, we would ask that the court affirm the board's decision. Thank you. Thank you. With the court's permission, my time is brief, so I'll try to be quick. The memorandum has utmost importance, and it's not just a recitation of the termination notice. It has to go to the analysis made by the contracting officer so that there is a contemporaneous record that if the contractor wants to bring the matter forward for review, that there's explanations, not just restatements. There's explanations of the steps taken by the contracting officer to make the determination that he sets forth in the termination notice. In the record, the contracting officer was asked specifically, did you provide one upon interrogatories? No, I don't know. Well, yes. No, I don't know. Then he was asked, are you sure? Is there a memorandum? Is there a termination memorandum? And the answer was no. The judge even said, I think this is resolved. We've got it. Do you know whether the file has a termination memorandum in it now? Excuse me? Does the file have a termination memorandum in it? Not an actual one, just the one that the judge sort of created ad hoc by his findings. Okay. Additionally, Burlington supports that concept that you can't create post hoc, something that will prejudice. What do you get out of a memorandum that the contractor didn't get out of the notice? The steps that he actually took. Who did he talk to? The seven steps that F says that DCX addresses. The reason DCX is good law and was held the way it was held. DCX says that the contracting officer doesn't have to take the seven steps, that the contractor can't complain about that. Correct. But in the facts of DCX, the contractor did have a memorandum, went through a rational explanation of their decision, described the steps they took. This contracting officer did not do that. So where DCX was great in those facts, in these facts, the contracting officer doesn't have the contemporaneous record to establish that he followed any of those steps. And then again, specifically with regards to the memorandum, he admitted that he didn't do one. And again, the notice of termination does specifically lay out facts, but it doesn't describe analysis. They never made the comparison of, okay, well, we need these units. Somebody new is going to get it to us in 120 days, where the inspector had already testified that Day-Daniel could probably have these things done in two weeks. Why would you have done differently? Had there been a termination memorandum that reflected what was already in the record? It would have, if it was an honest one, it would have shown that he made no analysis. If there was a document that had the title termination, a memorandum, and simply repeated all the steps that were in the termination notice, what would you have done differently? It would have exposed the fact that none of the seven steps required by Section F that DCX says you can use to determine an abuse of discretion. It would show that they didn't get done. And in the absence of a memorandum, you can make those same arguments. You tried to make those arguments, and you didn't prevail. That's why I believe why we're here, is because we have no record to go on. So the government, part of what we have talked about is that some sort of prejudices our clients and my clients claim. The contractor's claim is he doesn't have a way to even analyze what the contracting officer reviewed to make his determination because he doesn't give the reasoning. He just recites facts and conclusions. Conclusions are not reasons. They're not reasoning. They're not analysis. He doesn't have the information to see that the contracting officer followed the steps which DCX said he didn't have to follow. Well, it's not whether or not he has to or doesn't have to follow them. Those aren't determinative of conveying a right to the contractor. But the contracting officer is still obligated to follow those steps. Well, you can't complain about it. And as a result, that behavior on the government side is prejudicial and is an abuse of his discretion. Okay. Time is up. We thank both sides. The case is submitted.